UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-02368-AH-(DTBx) | Date | January 30, 2025 |
| Title | *Alexander W. Jackson v. Marten Transport, Ltd. et al.* | | |

Present: The Honorable   Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 13) AND GRANTING DEFENDANT'S MOTION TO STAY (DKT. NO. 15)

Before the Court are Plaintiff Alexander W. Jackson's ("Plaintiff") Motion to Remand (Dkt. No. 13) and Defendant Marten Transport, Ltd.'s ("Defendant") Motion to Stay Case (Dkt. No. 15). The matter is fully briefed, and the Court heard oral argument on January 29, 2025. For the reasons below, the Court DENIES Plaintiff's Motion to Remand and GRANTS Defendant's Motion to Stay.

## I.  BACKGROUND

Plaintiff is a former driver for Defendant. Compl., Dkt. No. 1-2, ¶ 7. On August 22, 2024, Plaintiff filed this wage and hour class action against Defendant alleging: (1) failure to pay minimum wages; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to furnish accurate itemized wage statements; (5) waiting time penalties; and (6) violation of California's Unfair Competition Act ("UCL"). *See generally id.* Plaintiff seeks to represent "all current and former California employees of Defendant Marten Transport, Ltd., employed in California, at any time beginning four (4) years prior to the filing of the

Complaint through the date notice is mailed to the Class (the 'Class Period'), and who drove a truck for Defendant." *Id.* ¶¶ 3, 24.

There are currently several wage and hour class actions that are pending against Defendant: the *Allen/Martinez, Hayes, Morrison/Loper*, and *Mora* Actions. Mot., Dkt. No. 15, at 2-6. "Of the five previously filed class actions, four are pending in California state court—with two of the actions coordinated by the Judicial Council Coordination Proceedings ('JCCP'), and the other two already stayed pending resolution of the JCCP-coordinated actions—while the fifth, pending in the Northern District of California, is also currently stayed (but-for a limited lift of that stay to conduct limited discovery)." *Id.* at 1.

This action was originally filed in Superior Court of California, County of Riverside (Case No. CVRI2404789). Mot., Dkt. No. 13, at 2. Defendant removed the case to this Court on November 1, 2024, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, 1453 and Fed. R. Civ. P. 81(c). *Id.* Plaintiff filed his Motion to Remand on November 27, 2024. Defendant filed its Motion to Stay on December 11, 2024.

## II.  LEGAL STANDARD

### A.  Motion to Remand

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action in state court to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA," because the statute was enacted "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014). The notice of removal "need include only a plausible allegation that the amount-in-controversy exceeds the jurisdictional threshold." *Id.*

"[A] damages assessment may require a chain of reasoning that includes assumptions." *Ibarra*, at 1199 (9th Cir. 2015). "When that is so, those assumptions

cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* Thus, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)). "[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197.

"A defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (citing *Dart Cherokee*, 574 U.S. at 87). When a plaintiff contests the amount, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 88. The "'[a]mount at stake' does not mean likely or probable liability; rather, it refers to *possible* liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (emphasis added).

### B. Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Where a stay is considered pending the resolution of another action, the court need not find that two cases possess identical issues, only that the issues are substantially similar. *See id.* at 254. In deciding whether to grant a stay, a court may weigh the following: "the possible damage which may result from the granting of a stay; the hardship or inequity which a party may suffer in being required to go forward; and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-255).

## III.    DISCUSSION

Because it affects its subject matter jurisdiction over this action, the Court first addresses the Motion to Remand.

### A.    Motion to Remand

A violation rate in wage and hour suits represents the percentage of shifts in which class members hypothetically experienced a violation. *See Holcomb v. Weiser Sec. Servs., Inc.*, 424 F. Supp. 3d 840, 845 n.2 (C.D. Cal. 2019) ("A 100% violation rate calculation assumes violations occurring in every identified shift for each class member."). "[A] defendant is not 'required to comb through its records to identify and calculate the exact frequency of violations.'" *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 974-75 (E.D. Cal. 2023) (quoting *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1199).

#### 1.    <u>Unpaid Minimum Wage</u>

First, the Court finds Defendant's assumptions regarding unpaid minimum wage reasonable. Plaintiff argues that "the violation rates are arbitrary" and "Defendants err in effectively assuming a uniform rate of one violation per week for each claim." Mot., Dkt. No. 13, at 5. Defendant calculated that "[c]onservatively applying California's minimum wage from 2020 ($13.00/hour) to the allegedly unpaid activity occurring throughout the entire class period, class members working only a quarter-hour of each day off-the-clock puts at least $901,966 in unpaid minimum wages in controversy." Opp'n at 7.

Considering the complaint's broad allegations that "[a]t *all times* relevant during period of time that Defendant paid its drivers per completed trips and/or miles traveled, Plaintiff engaged in several nondriving tasks during his shifts," the Court finds Defendant's estimate was reasonable. Compl. ¶ 38 (emphasis added). Defendant does not include the $16,530,250 in civil penalties Plaintiff is seeking for violation of Labor Code section 1197.1 in their argument. Opp'n at 9 n.7. Finally, although Plaintiff also argues that the "evidence is insufficient because it

does not identify each specific alleged violation within the class period," Mot., Dkt. No. 13, at 5, as discussed above, this is not what is required.[1] Accordingly, the amount-in-controversy from wage statement penalties is at least $901,966. *See* Opp'n at 16.

### 2. <u>Meal and Rest Breaks</u>

Second, the Court finds Defendant's estimate regarding meal and rest breaks reasonable. Defendant "assumes a conservative estimate of one missed meal and rest period per week based on Plaintiff's allegations that at all times during the liability period [Defendant] 'failed to permit Plaintiff and the class members with duty-free rest periods' and failed to 'provide Plaintiff an opportunity to take a lawful rest break.'" Opp'n at 10 (quoting Compl. ¶¶ 21, 53-61). Plaintiff argues that Defendant did not provide any factual basis to support this position and "err[ed] in effectively assuming a uniform rate of one meal violations per week and one rest break violations per week." Mot., Dkt. No. 13, at 7.

Again, Defendant's conservative assumption of one per week based on the complaint's broad allegations that class members "consistently worked" over the minimum amount of time, and "at all times during the liability period," were not allowed to take meal and rest breaks, was reasonable. *See Bryant v. NCR Corp.*, 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided three of the five meal periods and three of the ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint."). Accordingly, the amount-in-controversy from wage statement penalties is at least $1,732,250. *See* Opp'n at 16.

### 3. <u>Wage Statements</u>

Finally, with respect to the inaccurate wage statement assumptions, the Court finds Defendant's 100% violation rate was reasonable given the complaint's allegations of widespread wage and hour violations and the lack of limiting

---

[1] In reply, Plaintiff argues that the calculation is flawed because Defendant "improperly assumes that each class member worked every week during the relevant time period." Reply at 3. However, even if this assumption were overbroad, this does not mean that the proper calculation is therefore 0. *See Jauregui, supra*, 28 F.4th at 995. That Defendant did not use a 100% violation rate sufficiently addresses Plaintiff's concern about the number of weeks used in the calculation.

language regarding wage statements. *See* Compl. ¶ 65. The complaint alleges that "at all times relevant, Defendant knowingly and intentionally failed to furnish and continues to knowingly and intentionally fail to furnish Plaintiff and each Class member with timely and accurate itemized statements showing the total hours worked and gross wages earned by each of them." *Id.* Considering the wage statements are derivative of the unpaid minimum wage, meal and rest break claims, Defendant's calculations are reasonable pursuant to the discussion above.

Plaintiff argues that "[c]ourts have refused to credit defendants' speculative assumption of a 100 percent violation rate in the absence of summary-judgment type evidence or allegations in the complaint supporting it." Mot., Dkt. No. 13, at 8. However, in similar circumstances the Ninth Circuit has held that "it was not unreasonable for [the defendant] to assume that the vast majority (if not all) of the alleged violations over the four years at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty." *Jauregui*, 28 F.4th at 994. When a complaint "provides little information about the frequency with which [d]efendant allegedly violated California labor laws, [d]efendant may reasonably choose to estimate the frequency of violations when calculating the amount in controversy." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2019 WL 7987117, at *6 (C.D. Cal. 2019) (finding a 100% assumed violation rate when the complaint did not contain any qualifying words on the frequency of violations). Plaintiff did not provide any facts that would suggest a lower violation rate. Accordingly, the amount-in-controversy from wage statement penalties is at least $2,650,100. *See* Opp'n at 16.

### 4. Other Claims

Based on the amount in controversy from these three claims alone, the Court concludes that Defendant has met its burden to establish federal subject matter jurisdiction under CAFA.[2] *See Ibarra*, 775 F.3d at 1197 (noting the court is to test whether CAFA's requirements are met by a preponderance of the evidence by considering "the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure").

---

[2] Because these claims alone would be sufficient to meet the amount in controversy, the court need not consider Plaintiff's other claims. Nevertheless, the court notes that Defendants have calculated there are at least approximately three million dollars in potential damages for Plaintiff's claims regarding Defendants' alleged waiting time violations and claim for attorney's fees. *See* Opp'n at 16.

The Court is bound by the Ninth Circuit's disposition not to impose an anti-removal presumption in CAFA cases. *Jauregui*, 28 F.4th at 992-93. Accordingly, the Court finds that Defendant has met its burden to demonstrate the total amount at issue in this case exceeds the $5 million threshold required by CAFA. Defendant's Motion to Remand is therefore DENIED.

### B. Motion to Stay

Defendant requests that the Court stay the instant action pending resolution of various parallel state and federal court actions. The Court first assesses whether a stay would be warranted under the following framework. The first factor is "the damage that may result from granting a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. at 254-255). Second, the Court considers "the hardship or inequity a party may suffer if required to proceed in the litigation." *Id.* Third, the Court weighs "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

First, Plaintiff argues that he will be harmed by delay if the action is stayed. *See* Opp'n, Dkt. No. 19, at 8-9. This action is in its initial stages, while the *Allen/Martinez* Actions—of which Plaintiff is included in the proposed class—are proceeding to a renewed motion for class certification next month. *See Cullum v. Manheim Invs., Inc.*, 2016 WL 11809110, at *3 (C.D. Cal. Dec. 6, 2016) ("The fact that this case is also in the early stages of litigation also weighs in favor of granting a stay."). Next, Defendant is likely to suffer prejudice if forced to litigate various overlapping class action. Plaintiff asserts that Defendant must show "irreparable harm," but the *Landis* standard requires only "hardship or inequity." *See* Opp'n at 4; *Landis*, 299 U.S. at 255. In any event, because Defendant would have to expend additional time and money on duplicative discovery processes and motions practice, this factor favors a stay.

Finally, Defendant argues that without a stay, the "orderly course of justice" will not be achieved because "courts in five different actions… will be forced to consider the same evidence regarding many identical claims and could reach different results." Mot., Dkt. No. 15, at 9. Plaintiff argues that "the allegations and claims sought by Plaintiff Jackson are not similar to those in the Allen/Martinez Actions and the Hayes Action" and that they "involve different facts or have nuances not present in the other actions." Opp'n, Dkt. No. 19, at 5-6. Where a stay is considered pending the resolution of another action, the court need not find that

multiple cases possess identical issues, only that the issues are substantially similar. *See Landis*, 299 U.S. at 254 ("[W]e find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical.").

Here, the issues in the current action and the related cases are substantially similar. All Plaintiff's causes of actions are also alleged in *Allen/Martinez* or *Hayes*. Plaintiff asserts that the meal and rest break claims in *Allen* and *Hayes* were dismissed by way of motion practice and were voluntarily dismissed in the *Martinez* action. Opp'n, Dkt. No. 19 at 6. Even assuming these claims were raised and dismissed, a stay would still be appropriate because the issues that were asserted and remain are substantially similar.[3] Furthermore, the class definition in the *Allen/Martinez* Action encompasses Plaintiff's entire putative class. Accordingly, this factor favors a stay to prevent inconsistent rulings and requiring courts to answer the same legal and factual questions multiple times.

Although the parties dispute whether *Colorado River* applies, the *Colorado River* factors also weigh in favor of a stay. To determine whether a stay or dismissal is appropriate under *Colorado River*, courts in the Ninth Circuit consider eight factors: "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *R.R. St. & Co. Inc. v. Transp. Ins. Co.,* 656 F.3d 966, 978–79 (9th Cir. 2011). These factors are not a "mechanical checklist," and courts must "examine them in a pragmatic, flexible manner with a view to the realities of the case at hand." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017) (cleaned up). "The underlying principle guiding this review is a strong presumption against federal abstention." *Id.*

The Court agrees with Defendant's characterization of these factors. The first and second factor are not applicable because no property is involved, and all proceedings are in California. The state court cases were filed several years before

---

[3] In any event, Plaintiff did not request that the Court grant a stay of limited scope to allow the meal and rest break claims to proceed. Rather, Plaintiff did not provide an alternative to Defendant's request that the whole action be stayed.

this action and are in ongoing discovery, satisfying the fourth factor. Because Plaintiff is not pursuing any federal claims, factors five and six also support a stay. Neither party suggests any concern over forum shopping, and the Court likewise finds this factor to be neutral. Plaintiff challenges only the third factor of *Colorado River*: whether a stay will prevent piecemeal litigation. *See* Opp'n at 12-13. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). Here, as discussed above, the parallel cases involve similar issues of law and discovery is currently in progress. Without a stay, the parties would engage in duplicative discovery and fact-finding efforts, risking inconsistent results. Accordingly, a stay will prevent the piecemeal litigation that *Colorado River* looks to avoid.

Because the relevant factors all weigh in favor of a stay, the Court GRANTS Defendant's Motion to Stay and STAYS the instant action pending resolution of the *Allen/Martinez* Actions.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand (Dkt. No. 13) and GRANTS Defendant's Motion to Stay (Dkt. No. 15). This action is STAYED in its entirety pending completion of the *Allen/Martinez* Actions, or until further order of the court.

The parties shall submit a brief Joint Status Report apprising the court of the status of the *Allen/Martinez* Actions within one week of the resolution of the class action certification and continuing every three months thereafter. Furthermore, within ten (10) days of either (1) a resolution of the state court action through settlement or other informal means, or (2) completion of the state court trial, the parties shall file a Joint Notice informing the court of such development.

Given the parties do not dispute an amendment, Plaintiff is granted leave to file and serve an amended complaint at the appropriate time. An answer should be filed within twenty-one (21) days of the amended complaint. The action is stayed with the exception of these filings, which once filed will stay the entire matter pending completion of the *Allen/Martinez* Actions.

**IT IS SO ORDERED.**